# EXHIBIT A

| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED<br>April 9, 2025 2:51 PM<br>FILING ID: 668134753079E<br>CASE NUMBER: 2025CV31294 |
| STEVE MIGHELL and<br>STEPHANIE HOLLOWAY,<br>*On behalf of themselves and those similarly situated,*<br>Plaintiffs<br><br>v.<br><br>HPG PIZZA I, LLC, a Delaware limited liability<br>company,<br>HPG PIZZA II, LLC, a Delaware limited liability<br>company,<br>ROB PRANGE, individually,<br>JOHN NICHOLAS RHOADS, individually,<br>NATHAN JACKSON HAMILTON, individually,<br>DOE CORPORATIONS 1-10, and<br>JOHN DOES 1-10,<br>Defendants. | |
| | **▲ COURT USE ONLY ▲**<br><br>Case No.:<br><br>Courtroom: |
| **ATTORNEYS FOR PLAINTIFF:**<br>David Lichtenstein, #11408<br>Livelihood Law, LLC<br>12015 E. 46th Ave., Suite 240<br>Denver, CO 80239<br>Telephone: (720) 465-4420<br>drl@livelihoodlaw.com<br><br>Andrew R. Biller (*Pro Hac Vice forthcoming*)<br>Andrew P. Kimble (*Pro Hac Vice forthcoming*)<br>Laura E. Farmwald (*Pro Hac Vice forthcoming*)<br>Emily Hubbard (*Pro Hac Vice forthcoming*)<br>Biller & Kimble, LLC<br>8044 Montgomery Road, Suite 515<br>Cincinnati, OH 45236<br>Telephone: (513) 202-0710<br>abiller@billerkimble.com<br>akimble@billerkimble.com<br>lfarmwald@billerkimble.com<br>ehubbard@billerkimble.com | |

<div style="border:1px solid">

## COMPLAINT AND JURY DEMAND

</div>

1.      Plaintiffs Steve Mighell and Stephanie Holloway, on behalf of themselves and similarly situated individuals, brings this action against Defendants HPG Pizza I, LLC; HPG Pizza II, LLC; Rob Prange; John Nicholas Rhoads; Nathan Jackson Hamilton; Doe Corporations 1-10; and John Doe 1-10 ("Defendants") based on Defendants' compensation and reimbursement policies at the Defendants' Papa John's stores.

2.      Defendants own and operate over 30 Papa John's franchise stores located in Colorado ("HPG Papa John's stores.").

3.      Plaintiffs seek to represent similarly situated delivery drivers for Defendants' Papa John's stores.

4.      Defendants have repeatedly and willfully violated the Colorado Minimum Wage Act, C.R.S. § 8-6-101, et seq., by failing to adequately reimburse delivery drivers for their delivery-related and other work-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

5.      Defendants' failure to pay their delivery drivers minimum wages under the Colorado Minimum Wage Act, constitutes civil theft pursuant to C.R.S. §18-4-401; C.R.S. §8-6-116.

6.      Defendants have also repeatedly and willfully violated the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq., by taking unauthorized deductions from the delivery drivers wages and failing to pay all wages and compensation earned by the delivery drivers in a timely manner.

7.      Defendants have also violated Colorado wage and hour law by failing to provide rest breaks to delivery drivers at Defendants' Papa John's stores.

8.      Defendants have also repeatedly and willfully violated the Denver Revised Municipal Code ("DRMC") by failing to pay Denver minimum wage and failing to post or provide a wage notice to their employees.

9.      All delivery drivers at the Defendants' Papa John's stores, including Plaintiffs, are subject to the same, or similar, employment policies, practices and reimbursement rates.

## I.      Jurisdiction and Venue

10.     The Court has jurisdiction over this case pursuant to C.R.S. 13-1-124

11.     Venue in this Court is proper in this Court because this action concerns contracts for services to be performed in the City and County of Denver, Defendants operate a pizza restaurant in Denver County and Plaintiff Steve Mighell resides in Denver County, Defendants, or

some of them, reside in Denver County, service may be made on Defendants, or some of them, in Denver County, Defendants, or some of them are nonresidents of Colorado, Defendants, or some of them, may be found in Denver County, and Denver County designated in this Complaint,

## II.   Parties

**Plaintiff**

**Steve Mighell**

12.     Plaintiff Steve Mighell worked for Defendants in Denver, Colorado.

13.     Plaintiff Mighell is an "employee" of Defendants as defined in the CMWA, the CWCA, and the DRMC.

**Stephanie Holloway**

14.     Plaintiff Stephanie Holloway works for Defendants in Fountain, Colorado.

15.     Plaintiff Holloway is an "employee" of Defendants as defined in the CMWA and the CWCA.

**Defendants**

**HPG Pizza I, LLC**

16.     Defendant HPG Pizza I, LLC is a Delaware limited liability company authorized to do business under the laws of Colorado.

17.     HPG Pizza I, LLC maintains its principal place of business at 4201 Spring Valley Rd St 450, Dallas TX 75244.

18.     Upon information and belief, HPG Pizza I, LLC is an entity that operates the HPG Papa John's stores.

19.     Upon information and belief, HPG Pizza I, LLC owns several Papa John's stores in Colorado.

20.     HPG Pizza I, LLC is one of the entities that has entered into a franchise agreement with Papa John's to operate the HPG Papa John's stores.

21.     HPG Pizza I, LLC is the entity that appears on Plaintiff Mighell's paystubs for work he completed for Defendants.

22.     HPG Pizza I, LLC may command where, when, and how much labor is performed by the delivery drivers at the HPG Papa John's stores.

3

23.     HPG Pizza I, LLC has substantial supervision and control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Upon information and belief, HPG Pizza I, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

25.     HPG Pizza I, LLC has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

26.     At all relevant times, HPG Pizza I, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, scheduling, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.     HPG Pizza I, LLC is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the Colorado Wage Act, and the Denver Revised Municipal Code.

**HPG Pizza II, LLC**

28.     Defendant HPG Pizza II, is a Delaware limited liability company with its principal place of business located at the same location as HPG Pizza I, LLC; 4201 Spring Valley Rd Ste 450, Dallas, TX 75244, US.

29.     Upon information and belief, HPG Pizza II, owns and operates Papa John's Pizza stores in Colorado.

30.     HPG Pizza II, is one of the entities that has entered into a franchise agreement with Papa John's to operate HPG's Papa John's stores.

31.     HPG Pizza II is the entity that appears on Plaintiff Holloway's paystubs for work she completes for Defendants.

32.     HPG Pizza II, may command where, when, and how much labor is performed by the delivery drivers at the HPG Papa John's stores.

33.     HPG Pizza II, has substantial supervision and control over Plaintiffs and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Upon information and belief, HPG Pizza II, applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

35.     HPG Pizza II, has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

36.     At all relevant times, HPG Pizza II maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, scheduling, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.     HPG Pizza II is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the Colorado Wage Act, and the Denver Revised Municipal Code.

**Rob Prange**

38.     Defendant Rob Prange is the Vice President of Operations of the Defendants' Papa John's stores.

39.     Rob Prange is Vice President of Operations of HPG Pizza, Inc.

40.     Upon information and belief, Rob Prange resides in Colorado.

41.     Rob Prange operates several Papa John's stores in Colorado.

42.     Rob Prange is individually liable to the delivery drivers at HPG's Papa John's stores under the definitions of "employer" set forth in the CWA and DRMC because he owns and operates Defendants' Papa John's stores, ultimately controls significant aspects of HPG's Papa John's stores' day-to-day functions, including supervising delivery drivers and controlling their work schedules and maintaining their employment records, and ultimately controls compensation and reimbursement of employees.

43.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had financial control over the operations at each of Defendants' Papa John's stores.

44.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had a role in significant aspects of HPG's Papa John's stores' day-to-day operations.

45.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had control over HPG's Papa John's stores' pay policies.

46.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had power over personnel and payroll decisions at HPG's Papa John's stores, including but not limited to influencing and determining the rate and method of paying delivery drivers.

5

47.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Papa John's stores.

48.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to stop any illegal pay practices that harmed delivery drivers at HPG's Papa John's stores.

49.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to transfer the assets and liabilities of the Defendant entities.

50.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to declare bankruptcy on behalf of the Defendant entities.

51.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to enter contracts on behalf of each of HPG's Papa John's stores.

52.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had the power to close, shut down, and/or sell each of HPG's Papa John's stores.

53.     At all relevant times, by virtue of his role as Vice President of Operations of HPG's Papa John's stores, Rob Prange has had authority over the overall direction of each of HPG's Papa John's stores and is ultimately responsible for their operations.

54.     HPG's Papa John's stores function for Rob Prange's profit.

55.     Rob Prange has influence over how HPG's Papa John's stores can run more profitably and efficiently.

**John Nicholas Rhoads**

56.     Defendant John Nicholas Rhoads is a manager and creator of HPG Pizza I, LLC.

57.     Upon information and belief, John Nicholas Rhoads is also a manager and creator of HPG Pizza II, LLC.

58.     Upon information and belief, John Nicholas Rhoads resides in Virginia.

59.     John Nicholas Rhoads controls the operations of HPG's Papa John's stores in Colorado.

60.     John Nicholas Rhoads is individually liable to the delivery drivers at HPG's Papa John's stores under the definitions of "employer" set forth in the CWA and DRMC because he is a manager and creator of HPG's Papa John's stores, ultimately controls significant aspects of

HPG's Papa John's stores' day-to-day functions, including supervising delivery drivers and controlling their work schedules and maintaining their employment records, and ultimately controls compensation and reimbursement of employees.

61.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had financial control over the operations at each of HPG's Papa John's stores.

62.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had a role in significant aspects of HPG's Papa John's stores' day-to-day operations.

63.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had control over HPG's Papa John's stores' pay policies.

64.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had power over personnel and payroll decisions at HPG's Papa John's stores, including but not limited to influencing and determining the rate and method of paying delivery drivers.

65.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to hire, fire and discipline employees, including delivery drivers at HPG's Papa John's stores.

66.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to stop any illegal pay practices that harmed delivery drivers at HPG's Papa John's stores.

67.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to transfer the assets and liabilities of the Defendant entities.

68.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to declare bankruptcy on behalf of the Defendant entities.

69.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to enter contracts on behalf of each of HPG's Papa John's stores.

70.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had the power to close, shut down, and/or sell each of HPG's Papa John's stores.

71.    At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, John Nicholas Rhoads has had authority over the overall direction of each of HPG's Papa John's stores and is ultimately responsible for their operations.

72.     HPG's Papa John's stores function for John Nicholas Rhoads's profit.

73.     John Nicholas Rhoads has influence over how HPG's Papa John's stores can run more profitably and efficiently.

**Nathan Jackson Hamilton**

74.     Defendant Nathan Jackson Hamilton is a manager and creator of HPG Pizza I, LLC.

75.     Upon information and belief, Nathan Jackson Hamilton is also a manager and creator of HPG Pizza II, LLC.

76.     Upon information and belief, Nathan Jackson Hamilton resides in Florida.

77.     Nathan Jackson Hamilton controls the operations of HPG's Papa John's stores in Colorado.

78.     Nathan Jackson Hamilton is individually liable to the delivery drivers at HPG's Papa John's stores under the definitions of "employer" set forth in the CWA and DRMC because he is a manager and creator of HPG's Papa John's stores, ultimately controls significant aspects of HPG's Papa John's stores' day-to-day functions, including supervising delivery drivers and controlling their work schedules and maintaining their employment records, and ultimately controls compensation and reimbursement of employees.

79.     At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had financial control over the operations at each of HPG's Papa John's stores.

80.     At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had a role in significant aspects of HPG's Papa John's stores' day-to day-operations.

81.     At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had control over HPG's Papa John's stores' pay policies.

82.     At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had power over personnel and payroll decisions at HPG's Papa John's stores, including but not limited to influencing and determining the rate and method of paying delivery drivers.

83.     At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to hire, fire and discipline employees, including delivery drivers at HPG's Papa John's stores.

84. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to stop any illegal pay practices that harmed delivery drivers at HPG's Papa John's stores.

85. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to transfer the assets and liabilities of the Defendant entities.

86. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to declare bankruptcy on behalf of the Defendant entities.

87. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to enter contracts on behalf of each of HPG's Papa John's stores.

88. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had the power to close, shut down, and/or sell each of HPG's Papa John's stores.

89. At all relevant times, by virtue of his role as a manager and creator of HPG's Papa John's stores, Nathan Jackson Hamilton has had authority over the overall direction of each of HPG's Papa John's stores and is ultimately responsible for their operations.

90. HPG's Papa John's stores function for Nathan Jackson Hamilton's profit.

91. Nathan Jackson Hamilton has influence over how HPG's Papa John's stores can run more profitably and efficiently.

**John Doe Corps. 1-10**

92. Upon information and belief, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiffs' "employer" under the FLSA and state law.

93. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe Individuals 1-10**

94. Upon information, there are other Defendants who own an interest and/or have operational control over the HPG Papa John's stores that also qualify as Plaintiffs' "employer" under the FLSA and state law.

95. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## III.    Facts

### Class-wide Factual Allegations

96.    During all or some of the relevant time period, Defendants operated the HPG Papa John's stores.

97.    Upon information and belief, there are over 30 HPG Papa John's stores in Colorado.

98.    The primary function of the HPG Papa John's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

99.    Some or all of the HPG Papa John's stores employ delivery drivers.

100.    All delivery drivers employed at the HPG Papa John's stores over the last six years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

101.    All of the HPG Papa John's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

102.    The HPG Papa John's delivery drivers' non-tipped job duties were not related to their tipped job duties.

103.    The HPG Papa John's delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or cutting pizzas, folding pizza boxes, doing dishes, cleaning around the store, and completing any other tasks necessary for the operation of the restaurant.

104.    The HPG Papa John's delivery drivers have been paid a tipped wage rate for hours worked on the road making deliveries.

105.    The HPG Papa John's delivery drivers have been paid at or close to minimum wage for the hours they work inside the store.

106.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

107.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, and other equipment necessary for delivery drivers to complete their job duties.

108.    Pursuant to such requirements, Plaintiffs and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, licensing, and registration, all for the primary benefit of Defendants.

10

109.    Defendants reimbursed the delivery drivers on either a per-delivery or per-mile basis that was not sufficient to cover all of the delivery drivers' expenses.

110.    The HPG Papa John's stores do not track or maintain records of the actual expenses of the delivery drivers.

111.    The HPG Papa John's stores do not reimburse delivery drivers for their actual expenses.

112.    The HPG Papa John's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

113.    The HPG Papa John's stores have not reimbursed delivery drivers at a reasonable approximation of the drivers' expenses.

114.    The HPG Papa John's stores' reimbursement methodology does not fully reimburse delivery drivers for their expenses.

115.    The HPG Papa John's stores did not keep adequate records of the methodology and data they relied upon in determining their reimbursement rates.

116.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.  2017: 53.5 cents/mile
      b.  2018: 54.5 cents/mile
      c.  2019: 58 cents/mile
      d.  2020: 57.5 cents/mile
      e.  2021: 56 cents/mile
      f.  2022 (1/1/2022-6/30/2022): 58.5 cents/mile
      g.  2022 (7/1/2022-12/31/2022): 62.5 cents/mile
      h.  2023: 65.5 cents/mile
      i.  2024: 67 cents/mile
      j.  2025: 70 cents/mile

117.    As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by Colorado law.

118.    The delivery drivers' unreimbursed expenses amount to unauthorized deductions under the CWCA, CMWA, and DRMC.

119.    Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

120.    All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of

11

similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

121.    Regardless of the precise amount of the reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

122.    Because Defendants paid their delivery drivers a gross hourly wage at, close to, or below the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

123.    By failing to adequately reimburse for delivery-related expenses, Defendants have taken unauthorized deductions from the wages of the delivery drivers.

124.    By failing to adequately reimburse for delivery-related expenses Defendants have failed to provide wages and/or compensation earned by the delivery drivers in a timely manner.

125.    Defendants did not permit delivery drivers to take a 10-minute rest break for each 4 hours of work, or major fractions thereof.

126.    During all or some of the relevant time period, Defendants have failed to properly claim a tip credit from wages of their minimum wage delivery drivers because, after deducting unreimbursed expenses, Defendants paid the delivery drivers an effective wage rate more than $3.02 per hour less than the full minimum wage.

127.    Defendants have willfully failed to pay minimum wage to Plaintiffs and similarly situated delivery drivers at the HPG Papa John's Pizza stores, have taken unauthorized deductions from the delivery drivers' wages, have failed to pay the delivery drivers all wages due, have failed to permit delivery drivers to take rest breaks as required by law, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

128.    Defendants have received a benefit by virtue of the delivery drivers using their own cars to complete deliveries—they do not have to incur the expense themselves.

129.    The delivery drivers have provided a benefit to Defendants in the form of saved automobile costs.

130.    It is unjust for Defendants to retain the benefit conferred on them by their delivery drivers by reimbursing only a portion of the business-related costs incurred by the delivery drivers.

## Plaintiffs' Individual Factual Allegations

131.    Plaintiff Steve Mighell worked as a delivery driver at one of Defendants' Papa John's Pizza stores located in Denver, Colorado from June 15, 2023 to July 13, 2023.

132.    Plaintiff Mighell worked dual jobs—one where he delivered food and received tips, and another where he worked inside the store completing non-tipped duties.

133.    At the time of Plaintiff Mighell's employment, the Denver minimum wage was $17.29 per hour.

134.    Plaintiff Mighell worked "dual jobs."

135.    Plaintiff Mighell's inside job duties were not related to his delivery job duties.

136.    Plaintiff Mighell's inside duties included taking phone orders, helping carryout customers, cleaning, cutting pizzas, and folding pizza boxes.

137.    Plaintiff Mighell did not receive tips related to or for his hours worked completing his inside duties.

138.    Defendants paid Plaintiff Mighell a cash wage rate of $10.64 for each hour worked inside the store.

139.    Defendants paid Plaintiff Mighell a cash wage rate of $10.63 per hour for the hours he worked on the road making deliveries before accounting for advanced vehicle expenses.

140.    Plaintiff Mighell was reimbursed approximately $.35 per mile when on the road making deliveries for Defendants.

141.    On at least one occasion, Plaintiff Mighell was asked to use his personal vehicle, in addition to making deliveries to customers, to transport food supplies from another store to the location he worked at.

142.    Plaintiff Mighell was not reimbursed for the mileage while driving for Defendants for this other, non-customer related work that also required the use of his personal vehicle.

143.    Plaintiff Mighell was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

144.    Plaintiff Mighell was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary to complete his job duties.

145.    Plaintiff Mighell purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing,

13

licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

146.    Defendants did not track the actual expenses incurred by Plaintiff Mighell.

147.    Defendants did not reimburse Plaintiff Mighell based on his actual delivery-related expenses.

148.    Plaintiff Mighell was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

149.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Plaintiff Mighell.

150.    During Plaintiff Mighell's employment with Defendants, Defendants failed to adequately reimburse Plaintiff Mighell for automobile and other job-related expenses.

151.    Plaintiff Mighell regularly made approximately fifteen deliveries per shift.

152.    Plaintiff Mighell regularly drove about 5 to 10 miles per delivery.

153.    In 2023, for example, the IRS business mileage reimbursement was $.655 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased Plaintiff Mighell's net wages by approximately $.305 ($.655 - $.35) per mile. Considering a conservative estimate of about 5 average miles per delivery, Defendants under-reimbursed him about $1.525 per delivery ($.305 x 5 miles).

154.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Plaintiff Mighell has "kicked back" to Defendants approximately $4.575 per hour ($1.525 per delivery x 2.5 deliveries per hour).

155.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Mighell minimum wage as required by law.

156.    Defendants did not properly claim a tip credit from the wages of Plaintiff Mighell because they did not actually pay him the wages they promised they would pay him, after deducting for automobile expenses.

157.    Defendants did not and cannot properly claim a tip credit from the wages of Plaintiff Mighell because, after accounting for unreimbursed expenses, they paid him a wage rate more than $3.02 per hour less than full minimum wage.

158.    Plaintiff Mighell did not authorize Defendants to deduct a portion of his wages to cover automobile expenses that served Defendants' benefit.

159.    Plaintiff Mighell regularly worked shifts that lasted between 8 and 12 hours.

14

160.    Defendants did not permit Plaintiff Mighell to take 10-minute rest breaks for each 4 hours of work, or any major fraction thereof.

161.    Plaintiff Stephanie Holloway works as a delivery driver at Defendants' Papa John's Pizza store located in Fountain, Colorado and has since Defendants took over ownership in 2022.

162.    Plaintiff Holloway works dual jobs.

163.    Defendants paid Plaintiff Holloway a cash wage rate of $10.63 per hour for the hours she worked on the road making deliveries before accounting for advanced vehicle expenses.

164.    Defendants paid Plaintiff Holloway a cash wage of $10.81 per hour for each hour worked inside the store.

165.    Plaintiff Holloway's inside job duties are not related to her delivery job duties.

166.    Plaintiff Holloway's inside duties include taking phone orders, helping carryout customers, cleaning, cutting pizzas, and folding pizza boxes.

167.    Plaintiff Holloway is reimbursed approximately $.35 per mile when on the road making deliveries for Defendants.

168.    Plaintiff Holloway is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

169.    Plaintiff Holloway is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary to complete her job duties.

170.    Plaintiff Holloway purchases gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, licensing and registration costs, and incurs cell phone and data charges all for the primary benefit of Defendants.

171.    Defendants do not track the actual expenses incurred by Plaintiff Holloway.

172.    Defendants do not reimburse Plaintiff Holloway based on her actual delivery-related expenses.

173.    Plaintiff Holloway is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

174.    Defendants' reimbursement policy does not reasonably approximate the expenses incurred by Plaintiff Holloway.

175.    Defendants have failed to adequately reimburse Plaintiff Holloway for automobile and other job-related expenses.

15

176.    Plaintiff Holloway regularly made approximately fifteen deliveries per shift.

177.    Plaintiff Holloway regularly drives about 6 miles per delivery.

178.    In 2024, for example, the IRS business mileage reimbursement was $.67 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. As such, every mile driven on the job decreased Plaintiff Holloway's net wages by approximately $.32 ($.67 - $.35) per mile. Considering an average of 6 miles per delivery, Defendants under-reimbursed her about $1.92 per delivery ($.32 x 6 miles).

179.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Plaintiff Holloway has "kicked back" to Defendants approximately $4.80 per hour ($1.92 per delivery x 2.5 deliveries per hour).

180.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Plaintiff Holloway minimum wage as required by law.

181.    Defendants did not properly claim a tip credit from the wages of Plaintiff Holloway because they did not actually pay her the wages they promised they would pay her, after deducting for automobile expenses.

182.    Defendants did not and cannot properly claim a tip credit from the wages of Plaintiff Holloway because, after accounting for unreimbursed expenses, they paid her a wage rate more than $3.02 per hour less than full minimum wage.

183.    Plaintiff Holloway did not authorize Defendants to deduct a portion of her wages to cover automobile expenses that served Defendants' benefit.

184.    Plaintiff Holloway regularly works shifts that last between 4 to 7 hours.

185.    Defendants do not permit Plaintiff Holloway to take 10-minute rest breaks for each 4 hours of work, or any major fraction thereof.

### Class Action Allegations

186.    Plaintiffs bring the First, Second, and Fourth through Seventh Counts, pursuant to Colo. R. Civ. P. 23, on behalf of themselves and:

> All similarly situated current and former delivery drivers employed at the HPG Papa John's stores owned, operated, and controlled by Defendants in Colorado, during the six years prior to the filing of this Class Action Complaint and the date of final judgment in this matter ("Rule 23 Subclass").

187.    Plaintiff Mighell brings the Third Count, pursuant to Colo. R. Civ. P. 23, on behalf of himself and:

All similarly situated current and former delivery drivers employed at the HPG Papa John's stores owned, operated, and controlled by Defendants in Denver, Colorado, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter ("Denver Rule 23 Subclass").

188.    Together the Rule 23 Subclass and the Denver Rule 23 Subclass constitute the "Rule 23 Class."

189.    The Rule 23 Class asserts CMWA, CWCA, DRMC., and civil theft claims on behalf of delivery drivers employed at the HPG Papa John's stores in Colorado from the date three years prior to the filing of the original complaint through the date of final judgment.

190.    The Rule 23 Class asserts a claim for unjust enrichment and a claim for failure to provide rest breaks on behalf of delivery drivers employed at the HPG Papa John's stores in Colorado from the date six years prior to the filing of the original complaint through the date of final judgment.

191.    The Denver Rule 23 Class asserts DRMC. claims for unpaid wages and civil theft on behalf of delivery drivers employed at the HPG Papa John's stores in Denver, Colorado from the date three years prior to the filing of the original complaint through the date of final judgment.

192.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

193.    The number and identity of the members of the Rule 23 Class are ascertainable from Defendants' records.

194.    The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class member are determinable from Defendants' records.

195.    For the purposes of notice and other purposes related to this action, the names and contact information of Rule 23 Class members are readily available from Defendants.

196.    Notice can be provided by means permissible under Colorado Rule of Civil Procedure 23.

197.    The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

198.    There are more than 50 Rule 23 Class members.

199.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

200.    Plaintiffs' and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to properly claim a tip credit, failing to pay overtime, failing to reimburse for expenses, taking unauthorized deductions, failing to pay earned wages, being unjustly enriched by their automobile policy, and failing to provide rest breaks.

201.    Plaintiffs and the Denver Rule 23 Class members who worked within the jurisdiction of Denver, Colorado were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay Denver, Colorado minimum wage and failing to post or provide a wage notice to the Rule 23 Class members who work or worked within the jurisdiction of Denver, Colorado.

202.    Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Colorado wage law.

203.    Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

204.    Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

205.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

206.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

207.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action.

208.    Upon information and belief, Defendants and other employers throughout the state violate the Colorado wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure

18

employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

209.    This action is properly maintainable as a class action under Colorado Rule of Civil Procedure 23(b)(3).

210.    Common questions of law and fact exist as to the Rule 23 Classes that predominate over any questions only affecting Plaintiffs' and the Rule 23 Class members individually and include, but are not limited to:

    a.  Whether Defendants paid Plaintiffs and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

    b.  Whether Defendants required Plaintiffs and the Rule 23 Class members to drive their own cars for work;

    c.  Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiffs and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

    d.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

    e.  Whether Defendants recorded Plaintiffs and the Rule 23 Class members' actual expenses;

    f.  Whether Defendants' reimbursement methodology reasonably approximated the automobile expenses of Plaintiffs and the Rule 23 Class members;

    g.  Whether Defendants properly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 each workweek;

    h.  Whether Defendants took deductions from the wages paid to Plaintiffs and the Rule 23 Class without authorization;

    i.  Whether Defendants paid Plaintiffs and the Rule 23 Class all wages due;

    j.  Whether Defendants permitted Plaintiffs and the Rule 23 Class to take rest breaks as required by law;

    k.  Whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

l.   The nature and extent of class-wide injury and the measure of damages for those injuries.

211.   In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

### IV.   Causes of Action

<u>Count 1</u>
**Breach of Contract to Pay Wages and Compensation**
**(On Behalf of Plaintiffs and the Rule 23 Subclass)**

212.   Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

213.   Defendants' failure to pay Plaintiffs their her wages and compensation is a breach of Plaintiffs' contract of employment.

214.   As a direct and proximate result of such breach, Ms. Landon has suffered damages equal to such unpaid amounts.

<u>Count 2</u>
**Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq*. and 7 CCR 1103-1:1, et seq.,**
**(On Behalf of Plaintiffs and the Rule 23 Subclass)**

215.   Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

216.   Defendants have at all times been an "employer" of Plaintiffs and all delivery drivers within the meaning of the CWA and CMWA.

217.   Defendants failed to pay Plaintiffs and the delivery drivers all minimum wages owed.

218.   Defendants required Plaintiffs and Defendants' delivery drivers to kick back a portion of their wages to the company by requiring them to provide cars to use to make deliveries

219.   Defendants took unauthorized deductions from the wages of Plaintiffs and the delivery drivers.

220.   Defendants' conduct and practices, as described herein, were willful and intentional.

221. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and the delivery drivers for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

<u>Count 3</u>
**DRMC Sec. 58-1,** *et seq.*
**Failure to Pay Denver Minimum Wage**
**(On Behalf of Plaintiff Mighell and the Denver Rule 23 Subclass)**

222. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

223. During the relevant time period, Defendants were each an "employer" of Plaintiff Mighell and the delivery drivers employed in Denver, Colorado within the meaning of the DRMC.

224. Defendants failed to pay Plaintiff Mighell and Defendants' Denver delivery drivers all minimum wages owed.

225. Defendants required Plaintiff and Defendants' Denver delivery drivers to kick back a portion of their wages to the company by requiring them to provide cars to use to make deliveries.

226. Defendants took unauthorized deductions from the wages of Plaintiff Mighell and Defendants' Denver delivery drivers.

227. Defendants' conduct and practices, as described herein, were willful and intentional.

228. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff Mighell and Defendants' Denver delivery drivers for unpaid wages, unreimbursed expenses, interest at a rate of 12% per year, a penalty in the amount of $100 per driver per day the violation occurred, liquidated damages in the amount of three times unpaid wages/unreimbursed expenses, costs, reasonable attorneys' fees, and such other legal and equitable relief as may be appropriate to fully remedy the violation for all violations which occurred within the three years prior to the filing of the Complaint.

<u>Count 4</u>
**Colorado Wage Claim Act—C.R.S. 8-4-101,** *et seq.*
**(On Behalf of Plaintiffs and the Rule 23 Class)**

229. Plaintiffs restate and incorporate the following allegations as if fully rewritten herein.

230. The Defendant entities have at all times been an "employer" of Plaintiffs and the delivery drivers within the meaning of the CWA.

231. During all or some of the relevant time period, Defendants Rob Prange, John Nicholas Rhoads, and Nathan Jackson Hamilton have each been an "employer" of Plaintiffs and the delivery drivers within the meaning of the CWA.

232. Defendants failed to pay Plaintiffs and the delivery drivers in a timely manner as required by C.R.S. 8-4-103(1).

233. Defendants have taken unauthorized deductions from the wages of Plaintiffs and the delivery drivers by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

234. Defendants conduct and practices, as described herein, were willful and intentional.

235. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and the delivery drivers for unpaid wages, unreimbursed expenses, statutory penalties, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

<div align="center">

**Count 5**
**7 CCR § 1103-1,** *et seq.*
**Unpaid Rest Breaks**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

</div>

236. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

237. The delivery drivers were entitled to rest breaks for a period of 10 minutes for each four hours of work, or major fractions thereof.

238. Defendants did not allow delivery drivers to take rest breaks.

239. During shifts lasting between 2 and 6 hours, the delivery drivers were entitled to at least one 10-minute break.

240. During shifts lasting between 6 and 10 hours, the delivery drivers were entitled to at least two 10-minute breaks.

241. During shifts lasting between 10 and 14 hours, the delivery drivers were entitled to at least three 10-minute breaks.

242. Defendants conduct and practices, as described herein, were willful and intentional.

243. By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and the delivery drivers for at least 10 minutes in unpaid wages for each shift exceeding 2 hours, statutory penalties, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the six years prior to the filing of the Complaint.

### Count 6
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Rule 23 Class)

244.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

245.    The delivery drivers have conferred a benefit on Defendants by using their own cars to work for Defendants.

246.    Defendants are aware of and have accepted the benefit conferred on them by delivery drivers.

247.    It would be unjust for Defendants to be permitted to retain the benefit conferred on them by the delivery drivers without commensurate compensation.

248.    Plaintiffs and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages, and reasonable attorney fees..

### Count 7
### Civil Theft
### (Colo. Rev. Stat. §18-4-401, §18-4-405)
### (On Behalf of Plaintiffs and the Rule 23 Class)

249.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

250.    Defendants knowingly, intentionally, and improperly took and/or retained control over Plaintiffs' and the delivery drivers' unpaid wages, and unreimbursed expenses.

251.    Defendants intended to permanently deprive Plaintiffs and the delivery drivers of their unpaid wages and unreimbursed expenses.

252.    As a result, Defendants failure to pay Plaintiffs their unpaid wages and unreimbursed expenses constitutes civil theft.

253.    By their theft of Plaintiffs' and the delivery drivers' unpaid wages and unreimbursed expenses, Defendants have caused Plaintiffs and the delivery drivers to incur damages in an amount to determined at trial, and for which Defendants are liable.

254.    Accordingly, Plaintiffs and the delivery drivers are entitled to treble damages and attorneys' fees. C.R.S. §18-4-405.

**WHEREFORE**, Plaintiffs pray for all of the following relief:

A.      Certification of this case as a class action pursuant to Rule 23 of the Colorado Rules of Civil Procedure for Colorado state law claims.

B.      Designation of Plaintiffs as representatives of the Rule 23 Class of delivery drivers and counsel of record as Class Counsel.

C.      Declaratory judgment that the practices complained of herein are unlawful under Colorado law.

D.      An award of unpaid minimum wages, overtime wages, unreimbursed expenses, unlawful deductions, and rest breaks, and statutory penalties due under Colorado wage and hour law.

E.      An award of unpaid wages, unreimbursed expenses, interest at a rate of 8% per year, a penalty in the amount of $100 per driver per day the violation occurred, liquidated damages in the amount of three times unpaid wages/unreimbursed expenses, costs, reasonable attorneys' fees, and such other legal and equitable relief as may be appropriate to fully remedy the violation for all violations which occurred within the three years prior to the filing of the Complaint as Colorado Civil Theft Damages.

F.      An award of equitable restitution and damages for unjust enrichment.

G.      An award of prejudgment and post-judgment interest.

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.      Such other legal and equitable relief as the Court deems appropriate.

**PLAINTIFFS DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted April 9, 2025

>                                 */s/ David Lichtenstein*
>                                 David Lichtenstein
>                                 Livelihood Law, LLC
>                                 12015 E. 46th Ave., Suite 240
>                                 Denver, CO 80239
>                                 Telephone: (720) 465-4420
>                                 drl@livelihoodlaw.com
>
>                                 Andrew R. Biller (*Pro Hac Vice forthcoming*)
>                                 Andrew P. Kimble (*Pro Hac Vice forthcoming*)

Laura E. Farmwald (*Pro Hac Vice forthcoming*)
Emily Hubbard (*Pro Hac Vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
abiller@billerkimble.com
akimble@billerkimble.com
lfarmwald@billerkimble.com
ehubbard@billerkimble.com

*Counsel for Plaintiffs and the
putative Rule 23 Class*

***In accordance with C.R.C.P. 121 §1-26(9), a printed copy of this document with original
signatures is being maintained by the filing party and will be made available for inspection by
other parties or the court upon request.***

☐**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED
May 27, 2025 11:41 PM
FILING ID: 668134753079E
CASE NUMBER: 2025CV31294

| | |
|---|---|
| District Court, City and County of Denver, Colorado<br>1437 Bannock Street<br>Denver, CO 80202 | |
| STEVE MIGHELL and<br>STEPHANIE HOLLOWAY,<br>*On behalf of themselves and those similarly situated,*<br>Plaintiffs<br><br>v.<br><br>HPG PIZZA I, LLC, a Delaware limited liability company,<br>HPG PIZZA II, LLC, a Delaware limited liability company,<br>ROB PRANGE, individually,<br>JOHN NICHOLAS RHOADS, individually,<br>NATHAN JACKSON HAMILTON, individually,<br>DOE CORPORATIONS 1-10, and<br>JOHN DOES 1-10,<br>Defendants. | |
| | ▲ COURT USE ONLY ▲ |
| **ATTORNEYS FOR PLAINTIFF:**<br>David Lichtenstein, #11408<br>Livelihood Law, LLC<br>12015 E. 46th Ave., Suite 240<br>Denver, CO 80239<br>Telephone: (720) 465-4420<br>drl@livelihoodlaw.com<br><br>Andrew R. Biller (*Pro Hac Vice forthcoming*)<br>Andrew P. Kimble (*Pro Hac Vice forthcoming*)<br>Laura E. Farmwald (*Pro Hac Vice forthcoming*)<br>Emily Hubbard (*Pro Hac Vice forthcoming*)<br>Biller & Kimble, LLC<br>8044 Montgomery Road, Suite 515<br>Cincinnati, OH 45236<br>Telephone: (513) 202-0710<br>abiller@billerkimble.com<br>akimble@billerkimble.com | **Case No.:**<br><br>**Division:** |

lfarmwald@billerkimble.com
ehubbard@billerkimble.com

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,
COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT
AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, crossclaim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:** 4/9/2024_____        */s/ David Lichtenstein*_____
                    **Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a
complaint, counterclaim, cross-claim, or third party complaint.